Henry P. Townsley, Respondent, *v.* Bankers' Life Insurance Company of the City of New York, Appellant.

*A general manager of a co-operative insurance company procuring by fraud proxies to oust the existing executive officers — abrogation of his contract of employment.*

The general manager of a life insurance company, incorporated under article 6 of the Insurance Law of the State of New York, for the purpose of transacting business under what is known as the co-operative or assessment plan, in which the members of the corporation are the policyholders, for the purpose of ousting the existing executive officers of the company, sent to each of the policyholders, without the knowledge of the executive officers, a blank proxy authorizing a person acting in the interest of the general manager to vote for the member at the next annual meeting, together with a circular letter printed upon paper formerly used by the company, and drawn in the same form as that used by the company when requesting proxies.

*Held,* that if the general manager intended to produce the belief on the part of the policyholders that the proxies would be used to re-elect the existing officers, when it was his intention to use them, as he actually did, in an attempt to prevent the re-election of such officers, he was guilty of a breach of trust which authorized the officers of the company to abrogate his contract of employment.

*Semble,* that the evidence established such an intent on the part of the general manager.

APPEAL by the defendant, the Bankers' Life Insurance Company of the City of New York, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 2d day of March, 1900, denying the defendant's motion to set aside the verdict of a jury in favor of the plaintiff, and for a new trial made upon the minutes.

*Julien T. Davies,* for the appellant.

*Edward C. James,* for the respondent.

INGRAHAM, J.:

The main question presented in this case is as to the right of the defendant to abrogate a contract by which the plaintiff was employed for a term of ten years. This contract was dated October 1, 1896, and by it the defendant appointed the plaintiff its general manager under its constitution and by-laws, with the title of general manager of agencies. It was therein provided that " the General Manager shall, with the general approval of the Board of Managers, have entire control of the agency force of the company, with power of appointment and removal, provided that the compensation of all agents is included in the compensation herein allowed to the General Manager." He was also to have, with a like approval, charge of the printing and distribution of all circulars and other printed matter relating to agency work as required by the business of the company, the cost of which printing was to be borne by the company. All circulars and printed matter were to be submitted for approval to a printing committee to be appointed by the board, and the printing was to be done by a printer to be selected by the said printing committee. As compensation for his services as general manager, including his expenses and disbursements, the plaintiff was to receive on all first-year premiums a commission of eighty-five per cent, and in addition thereto a renewal commission of $1 for each $1,000 of insurance renewed. The plaintiff agreed to devote his time, skill and ability to the performance of his duties as aforesaid, and to have placed upon the books of the company certain amounts of new insurance each year. It was further provided that " this contract shall, during the faithful performance of his

duties, continue for ten years from the date hereof, unless sooner terminated by mutual consent."

As the provisions of this contract are quite plain and unambiguous, all evidence of the relations existing between the plaintiff and defendant prior to the making of this contract was immaterial. On March 27, 1897, the board of managers of the defendant corporation passed a resolution by which the contract existing between the company and the plaintiff was declared abrogated and annulled ; on the same day notice of this resolution was sent to the plaintiff, and on the following day the plaintiff was excluded from the office of the company, and notice of the termination of the contract was given to the sub-agents of the company. This action was brought to recover the damages sustained by the plaintiff in consequence of the abrogation of the contract by the defendant. The defendant justifies the abrogation of the contract and the discharge of the plaintiff by reason of certain acts of the plaintiff between the date of the contract and the date of its abrogation ; and the substantial question presented is, whether the defendant was justified in abrogating the contract.

The defendant was incorporated under article 6 of the Insurance Law of this State (Laws of 1892, chap. 690). It had no capital stock and was organized for the purpose of transacting business under what is known as a co-operative or assessment plan. The members of the corporation appear to be the policyholders or those with whom the corporation has made contracts of insurance. The statute provides that there shall be in each year a meeting of the members or policyholders of such corporation, and at such meeting a full and specific report of the expenditures of the preceding year shall be submitted ; and by the constitution of the company the managers and officers of the company are to be elected by the policyholders thereof. The annual meeting of this defendant corporation was to be held January 12, 1897, at which meeting there was to be elected a president, a first and second vice-president, secretary, a treasurer and three managers. On or before December twenty-first the plaintiff and one Jonathan Kelshaw, who was one of the managers of the company, conceived the idea of turning out the executive officers of the company and electing officers other than those who had been in the control and management of the company. A circular was prepared, and on

December 21, 1896, was taken by him to a private printer not connected with the company and directions given that it be printed. The circular was to be inclosed with a proxy by which Kelshaw was appointed to represent the members and to vote for them at the meeting of the company, and purported to be issued by the company, and the plaintiff did not dispute but that it was his intention to induce the policyholders to whom it was sent to believe that the proxy was requested to vote in accordance with the wishes of the officers and managers of the company, and for their continuance in office.

That the circular was calculated to deceive the policyholders and induce them, by the false inference that it was issued with the authority of the officers of the company, to authorize the plaintiff and his co-conspirator Kelshaw to vote as their representative, is clear when we consider its terms. In this circular the plaintiff as general manager said to the policyholder : " *We* hand you herein, for your signature, a proxy to Mr. Jonathan Kelshaw, a member of *our* Board of Management, whose term of office does not expire at this meeting, and who has agreed to be present and represent such of the members as shall favor him with their proxy. In case you cannot be present, please sign the enclosed proxy and return in the enclosed envelope by return mail and you will greatly oblige." The envelopes in which the proxies were to be returned were addressed to the plaintiff. All the proxies that were received and not revoked were voted by Kelshaw at the meeting for the election of a ticket in opposition to that of the officers of the company who were then in office. The circular was not submitted to the printing committee, as required by the contract. About the time the plaintiff sent out these circulars he hired a box in the post office so that these proxies could be returned without the knowledge of the officers of the defendant, and he quite frankly stated that this whole proceeding was kept from the officers of the company, and that his object in obtaining the proxies was to change the management of the company and to oust the officers who were then in office. There was evidence to show that in many instances these circulars were successful in inducing members to send him their proxies under the supposition that they were returning them for the re-election of the officers then in charge of the company. Kelshaw, who was the plaintiff's associate in this undertaking, had been secretary of the

company, but had been compelled to resign because of an alleged
shortage in his accounts, and of that fact the plaintiff had knowledge,
but notwithstanding Kelshaw was the candidate of the plaintiff for
secretary in place of the one then in office and approved by the
managers of the company.   For the purpose of having these circu-
lars printed the plaintiff obtained letter paper formerly in use by
the company, upon which his name appeared as general manager,
from an employee who had it in charge, without communicating to
him the object for which he intended to use it.   In drawing up this
circular the plaintiff used substantially the same form as used by the
company in requesting a proxy from its policyholders, and it is
impossible to resist the conclusion that the plaintiff and Kelshaw
intended by deception to obtain proxies from the policyholders
which would enable them to change the officers of the company.

The plaintiff attempts to justify his action in thus trying to oust
the officers of the company by saying that he took these steps in
order to protect the company from the consequences that would
follow a resolution of the board of management which was passed
on December 22, 1896, by which the president and secretary were
authorized to ascertain the proper amounts, and transfer from the
mortuary and reserve accounts those portions of quarterly and semi-
annual premiums that had been credited to said accounts in error,
and that should have been credited to expense accounts.   He testi-
fied that he was informed of this resolution a day or two after it
was passed by Kelshaw; that it was after he was informed of the
passage of this resolution that he first took the steps to get the
proxies for Kelshaw for his election.   But this was evidently an
afterthought, as shown by the fact that these circulars were deliv-
ered to the printer by the plaintiff personally on the twenty-first day
of December, the day before the resolution was passed, and, so far as
appears, before this resolution was ever considered or plaintiff had
any knowledge that such a resolution was to be presented.   The
plaintiff testified that he took this proxy to the printer after the pas-
sage of the resolution, but he did not contradict the printer, who testi-
fied that he had ordered the circular on the twenty-first of Decem-
ber, the day before the resolution was passed.   The plaintiff further
attempts to justify his acts by claiming that as a policyholder he
took part in the election to protect his interests, but it appears that

at the time he sent out these circulars he had no policy in the company, as the one he had had he allowed to lapse, and it was just before the election, and some time after he sent out the circulars, that he took out a new policy in the company. In the view that we take of this question, however, this would not justify the plaintiff in making false or misleading statements to the policyholders to induce them to give him or his associates proxies to act for them at the meeting of the corporation.

Upon these facts the learned trial court charged the jury that the plaintiff was bound under his contract to deal fairly and loyally by his employer, and that he should not use the power and opportunity given to him by his position to do anything to the injury of the person who employs him, saying : " If in the course of his employment or during the time that his contract ran he were guilty of any act tending to the detriment of the company, intended and tending to injure it, then he would not have fulfilled the full mead of his obligations as an officer or employee of the company. * * * The mere fact that he was instrumental or active in bringing about a change in the management of the company was not in itself a violation either of his expressed or implied obligations as General Manager. And that he did interest himself and make some active exertions in the direction of changing the managers of the company is conceded upon the trial. He was, however, bound to do whatever he did in that regard in good faith towards the company. He was bound to do it actuated by a desire to improve the condition of the company, his employer, and not actuated by a desire to injure it in any way. * * * The first question that you have to determine is whether, in striving to procure a change in the administration of this company, the plaintiff did act in good faith, was actuated by motives having in view the advancement and protection and advantage of the company or whether he was actuated by bad motives and intended to produce injury to the company. * * * If he was actuated in good faith, if he believed that a change in the officers of the company would redound to the advantage of the company, and if he believed that there was danger in the company from the manner in which it was conducted or from contemplated action on the part of those existing officers, why, that would be a justification for him to have taken steps to obtain a change."

The defendant's counsel made various requests to charge to the effect that if requests for proxies were asked for and obtained under a circular which purported to be from the company and to be used in behalf of the re-election of the officers then in office, while in fact the plaintiff intended them to be used to prevent the re-election of the officers then in office, such conduct on the part of the plaintiff was incompatible with the proper and faithful performance of his duties under the contract and the defendant was entitled to a verdict. In refusing to charge these requests the court said : "I instructed them that they were to take into consideration all the acts of the plaintiff in attempting to procure those proxies, the manner in which it was done, in determining upon the question whether his attempt to supersede the old officers was done in good faith. I will not charge that except as I have charged." The defendant then asked the court to charge that "if the jury find as a fact that in sending out requests the plaintiff intended to deceive the policyholders, and used language in such circulars, the natural meaning of which was that the proxies would be used for the re-election of those who were then the executive officers of the defendant, then the jury must render a verdict for the defendant," and that, "if the jury find as a fact that in sending out circulars to the policyholders asking for proxies, the plaintiff intended to deceive the policyholders by making them believe that the proxies would be used for the re-election of those who were then the executive officers of the defendant, then the plaintiff was guilty of bad faith, and the defendant is entitled to a verdict." These requests were refused, and the defendant excepted.

The question that was thus presented to the jury was not whether the plaintiff had complied with his contract or with the obligation that he was under to the corporation by which he was employed, but whether what he did he did in good faith, intending it for the benefit of the company ; or, in other words, whether he considered in good faith it would be for the benefit of the company to have a change of management. He might well consider that he would make a more satisfactory manager for the company than the officer to whom its management had been intrusted. But assuming he did think so, was he justified in deceiving and imposing upon the members of the corporation to bring about the change ? In other words,

was he justified in deceiving his employers and obtaining from them proxies to vote contrary to their intention because he conceived that in thus deceiving them it was for the advancement of their interests? The plaintiff assumed under this contract the obligation to act in good faith towards his employers and to discharge faithfully and honestly the duties of the employment which he had undertaken; and it would be a violation of his undertaking for him to deliberately and intentionally deceive his employers in any material matter affecting their interests. Whether it was for the interest of the company that the officers then in charge should be continued, or that new officers should be elected, was to be determined by the policyholders, and not by the plaintiff. He had been intrusted by the policyholders with no authority to determine for them as to whether Mr. Morgan was a proper man to continue as president, or whether it was for the interest of the policyholders that there should be a change. Undoubtedly he had the right, by open and fair means, to endeavor to persuade the policyholders that a change would be for their interest; but he had no right to obtain from them proxies to vote at the election, upon representations which would induce them to consider that the proxies thus obtained would be used to continue the officers of the company, when it was his intention to use these proxies to oust such officers and elect others in their place. His good faith as to whether a change would or would not be to the advantage of the company was not the question.

There is no distinction to be drawn between the corporation and its members, the policyholders. As an officer or employee of the defendant, the relation that existed between himself and the members of the corporation, the policyholders, was one of trust and confidence. He was employed in their interest to conduct the business of the corporation for them. He was paid with money contributed by them, and it was to them that he owed a duty to be honest and faithful in his relation to them. Any violation of this duty, whether for his own behalf or not, justified them or their representatives, the officers of the company, in discharging him from the employ of the company. It seems to me that it was a distinct violation of his duty when he, acting as an employee or officer of the company, obtained from the policyholders proxies to vote at the meeting of the members of the corporation by these repre-

sentations, when in fact he intended to and did use the proxies thus obtained for the purpose of changing the officers of the company and electing others in their place.

No authority presenting this exact question is cited to us by either party. The general principle, however, is well settled. It is thus stated in 1 American and English Encyclopædia of Law (2d ed. p. 1071): "The paramount and vital principle of all agencies is good faith, for without it the relation of principal and agent could not well exist. So sedulously is this principle guarded that all departures from it are esteemed frauds upon the confidence bestowed. An agent, therefore, will not be allowed to put himself in a position antagonistic to his principal." (See, also, 1 Story Eq. [9th ed.] 304; Mechem Agency [1st ed.] § 454.) And this rule applies in all cases where the relation between two parties is one of trust and confidence. The policyholders of this company were entitled to look to the company's employees for the utmost good faith in all transactions between them. They were entitled to rely upon representations made by the company's employees as to all the company's proceedings; and receiving a request from one of the employees of the company from which but one inference could be drawn, they were justified in acting upon it, and in discharging such employee when it appeared that the employee deliberately intended to and did deceive them and obtain from them authority to act based upon the misrepresentations as to how he intended to act under the authority conferred. I think that upon the whole case, accepting the plaintiff's own version of the transaction, he was guilty of a breach of the duty that he owed to his employers which justified them in dismissing him from their employ and terminating the contract under which he was employed by the company. But if there can be any doubt upon this question, it seems to me entirely clear that the defendant was entitled to have the jury instructed as requested, and that the questions submitted to them should have been whether the plaintiff issued this circular to the policyholders and proxies, obtained proxies from them intending to produce the impression that the proxies if returned were to be used to re-elect the present officers of the company, when in fact it was the intention of the plaintiff to use them and he did so use them with the intention of defeating the election of the existing officers and electing others

in their place ; and if the jury so found, it was their duty to find for the defendant. But, as before stated, upon my view of the testimony, there was no dispute but that such was the intention of the plaintiff, and such the result of his action.

There are other questions presented as to the measure of damages which we are not called upon to discuss, as a new trial is necessary. The order appealed from is, therefore, reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., RUMSEY, PATTERSON and HATCH, JJ., concurred.

Order reversed and new trial ordered, with costs to appellant to abide event.