fire, and to repair damages caused by fire to any part of the bridge by its negligence or by the negligence of any contractor employed by it. If it had been intended to release any part of plaintiff's liability, it is reasonable to presume that the defendant would, at least, have required a formal assumption thereof by the asphalt company, if not a bond. This is not a case for the application of the rule by which one is not liable for the negligence of an independent contractor to whom work which may lawfully be performed is awarded. The plaintiff's liability does not depend on the doctrine of respondeat superior. The question here presented is to be decided on the contract obligations of the plaintiff to defendant, and from which, in giving the consent to the employment of the asphalt company, there was no intention to release it.

It follows that plaintiff was not entitled to recover, and that the judgment must be reversed, with costs, and the complaint dismissed, with costs, on defendant's motion duly made at the close of the evidence. All concur.

---

(160 App. Div. 177)

## TOWNSLEY v. NIAGARA LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. December 31, 1913.)

1. CORPORATIONS (§ 291\*)—AGENTS—EMPLOYMENT—TERM—TERMINATION.

A contract employing plaintiff as general manager of an insurance company fixed no time limit, but declared that it should be in force during the faithful performance of plaintiff's duties, unless sooner terminated by mutual consent, but if terminated otherwise than by mutual consent plaintiff should be paid certain commissions on specified business for 10 years, at which time all his interest under the contract should cease. *Held*, that the contract did not contemplate plaintiff's employment for an unlimited time, or for life, but was terminable at the will of either party.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1250–1254; Dec. Dig. § 291.\*]

2. CORPORATIONS (§ 291\*) — CONTRACT OF EMPLOYMENT — AUTHORITY OF OFFICERS OR DIRECTORS.

It is beyond the power of officers or directors of a corporation to make a contract of employment which will be perpetual or last during the life of an employé, or of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1250–1254; Dec. Dig. § 291.\*]

3. JUDGMENT (§ 588\*)—RES JUDICATA—SINGLE CAUSE OF ACTION—BREACH OF CONTRACT.

Defendant insurance company, in 1893, employed plaintiff as general manager under a contract entitling him to commissions; the contract being terminable at the will of either party, but providing that it should continue during plaintiff's faithful performance of his duties, unless terminated by mutual consent, but if terminated otherwise than by mutual consent plaintiff should be paid specified commissions for 10 years. In August, 1896, a new contract was executed, making certain changes in plaintiff's compensation, and reciting that defendant claimed the right to abrogate the contract of 1893, but plaintiff insisted that defendant had no such right. The contract further provided that all business done by the company, up to October, 1896, should be governed by the old contract, and that all money due to plaintiff under that contract should be paid to him, but that such former contract, except as to the business done thereunder "as aforesaid" and except as to deferred first year premiums

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

145 N.Y.S.—14

and renewals written up to and including September, 1896, was wholly canceled. In April, 1897, plaintiff sued defendant for alleged breach of the 1896 contract and recovered $10,000. *Held*, that such judgment was a bar to plaintiff's right to recover under the contract of 1893 and terminated all defendant's liability under that contract for renewal premiums on business written after September 30, 1898.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062, 1090; Dec. Dig. § 588.*]

Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by Henry P. Townsley against the Niagara Life Insurance Company. From a judgment for defendant, and from an order denying plaintiff's motion for a new trial, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

H. N. Selvage, of New York City, for appellant.
Gilbert E. Roe, of New York City, for respondent.

INGRAHAM, P. J. The action is brought to recover a percentage of certain renewal premiums on policies issued by the defendant based upon a contract, dated July 20, 1893, between the Bank Clerks' Mutual Benefit Association of the City of New York (defendant's predecessor) and the plaintiff. In the complaint that contract is treated as a valid, existing contract, and the claim for relief is based entirely upon its provisions, and a copy of it is annexed to the complaint. By that contract the plaintiff was appointed general manager of the association, and it conferred upon him all the powers and required of him all the duties of said position under the constitution and by-laws of the association. The full compensation of the plaintiff was to be as follows:

"On all first year's premiums, a commission of 60 per cent. to be paid to the said party of the second part, as said premiums are paid to the said party of the first part. In addition thereto, on the 31st day of December in each year, the said party of the second part, shall be allowed and paid a renewal commission equal to one dollar for each $1,000 of insurance in force on said day in Class B of said party of the first part."

Then followed a provision as to the amount of business that the plaintiff was to have placed upon the books of the association. The contract further provided:

"This contract shall continue during the faithful performance of his duties by the said party of the second part, unless sooner terminated by mutual consent. Should this contract be terminated otherwise than by mutual consent, then the renewal commissions aforesaid, on all the insurance established at the date of said termination, shall be payable as aforesaid, to the said party of the second part, or to his heirs, executors, administrators or assigns, during the next ten years following said termination, at which time all his interest therein shall cease."

[1] It will be noticed that by this contract there was no time fixed during which the employment should continue. It was not a contract of employment for any particular time. The plaintiff was not bound to service with the defendant, but evidently would have a right to terminate his contract by resigning his position at any time, and I think

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it clear that under the terms of this contract the employment by the association was not to be unlimited or during the life of the plaintiff, but was to be terminable at will by the association as well as by the plaintiff. Thus either party could terminate the contract, and provision was made for what would happen upon such termination.

[2] It was undoubtedly beyond the power of the officers or directors to have made a contract of this kind, which would be perpetual or last during the lifetime of the plaintiff or of the corporation (Beers v. New York Life Ins. Co., 66 Hun, 75, 20 N. Y. Supp. 788), and the contract does not upon its face purport to impose such an obligation upon the corporation. It says that the contract shall continue during the faithful performance of his duties by the said party of the second part, unless sooner terminated by mutual consent. But this provision, read with the other provisions of the contract, seems to me clearly to imply that either party should have the right to terminate the contract at will, and it was therein provided that, if the contract should be terminated otherwise than by mutual consent—thus recognizing the right of either party to terminate the contract—the plaintiff should receive certain percentage of the renewal premiums on policies issued during the time that he was general manager of the association.

The complaint further alleges that on or about August 20, 1896, at which time the contract was in full force and effect:

"The defendant claimed to abrogate, annul and terminate the aforesaid agreement of July 20, 1893, but the plaintiff insisted that the defendant had no right or authority to abrogate, annul, or terminate the same, and that its action was without any force or effect as against him; and thereupon it was on October 1, 1896, agreed by and between the plaintiff and the defendant that all business done by the defendant and all insurance written by it up to and including the 30th day of September, 1896, should be governed by and subject to the terms of said contract of July 20, 1893, and that all sums of money due or to grow due to the plaintiff under said contract of July 20, 1893, should be paid to him or his legal representatives as in said contract provided, and that the said contract, except as to the business done thereunder as aforesaid, and except as to deferred first year premiums, and except as to renewals written up to and including September 30, 1896, should be canceled."

The action is to recover the percentage of premiums received upon renewals of policies which policies had been issued during the time the contract of July 20, 1893, was in force.

The situation of the parties at the time this contract of October 1, 1896, was executed was that the plaintiff had acted under the contract of July 20, 1893, had obtained certain insurance for the defendant for which he had received his commissions; that the contract had been abrogated by the defendant, the plaintiff claiming that such abrogation was illegal, but the plaintiff was entitled to a renewal commission equal to $1, for each $1,000 of insurance in force on the 31st day of December in each year in Class B of the defendant for ten years following the termination of the contract. Thus whenever a policy which had been issued by the defendant during the time the plaintiff's contract was in force and he was its general manager should be renewed, the plaintiff would be entitled to $1 commission on every $1,000 of insurance, and

that right to a renewal commission was to continue for ten years from the termination of the contract.

The parties then made this agreement of October 1, 1896. That contract recited the contract of 1893; recited that defendant had claimed to abrogate and annul the contract, and that the plaintiff insisted that the company had no right or authority to abrogate or annul said contract; and it was then provided that all business done by the company and insurance written by it up to and including September 30, 1896, should be governed by and subject to the terms of the contract of 1893, and all sums of money due to the plaintiff under said contract should be paid to him in all respects as in said contract provided, and that said contract except as to the business done thereunder as aforesaid, and except as to deferred first year premiums, and except as to renewals written up to and including September 30, 1896, was wholly canceled.

The first question presented is as to what payments or obligations of the defendant which had accrued or would accrue under the contract of 1893 were kept in force by this provision. The contract had been abrogated on August 20, 1896, and it is presumed that policies had been issued by the defendant between that date and the 1st of October, 1896. There were also what were called deferred premiums, which were premiums on policies that had been issued but which had not been paid at the time the contract was made. As to these two classes or premiums, undoubtedly the plaintiff would be entitled to be paid his commissions. There was also commission on the renewal of policies the premiums of which had prior to the 1st of October been received by the company to which the plaintiff was entitled to his commission. The contract, it seems to me, covered those commissions, but it expressly provided that except as to renewals written up to and including September 30, 1896, the contract of 1893 was wholly canceled. Thus on all renewals that had been written up to and including September 30, 1896, the plaintiff was entitled to his commissions, but except as to such renewals the contract of 1893 was wholly canceled. The contract then appointed the plaintiff general manager; provided that full compensation for his services as such manager he should receive on all first year premiums a commission of 85 per cent. to be paid to him as such premiums are paid to the company; and in addition to such commissions on the last day of each month the general manager should be allowed and paid a renewal commission at the rate of $1 for each $1,000 of insurance renewed during the said month, such renewals to continue for the nine years succeeding the first year on each policy, but that such renewal commissions should not be paid after the first ten years of the life of the said policy. This provision for commissions on renewal premiums does not expressly state to what policies it was to apply, but it contained a general provision that the renewal commission was to be upon each $1,000 of insurance renewed during said month. Under this provision I assume that the plaintiff would be entitled to a commission on each old policy whether obtained by him or while he was general manager of the company which was renewed by the defendant. The contract then provided that, should it be terminated otherwise than by mutual consent, then the renewal commis-

sions on all the insurance accepted by the company at the date of such termination, and also the commissions on deferred premiums on first year business then accepted shall be payable as aforesaid to the general manager or his heirs but not exceeding ten years in all. Thus, if the contract was terminated otherwise than by mutual consent, the plaintiff would be entitled to the renewal commission on all insurance accepted by the company at the date of such termination, i. e., on all its outstanding policies at that time but not exceeding ten years in all.

[3] The complaint contains no allegation as to the abrogation of this contract of 1896, and apparently the plaintiff does not rely upon it as establishing a cause of action. The answer, however, alleges as a separate defense that in April, 1897, the plaintiff commenced an action against the defendant alleging a breach of the 1896 contract; that that action was tried and resulted in a verdict for the plaintiff for $50,000, which was reversed on appeal to this court in 56 App. Div. 232, 67 N. Y. Supp. 664; that there was a second trial which resulted in a verdict for the plaintiff for $10,000, which judgment was paid. Any liability under the 1893 contract which had been abrogated by the company was merged in the provisions of the 1896 contract, and it was there expressly provided that that contract, except as to renewals written up to and including September 30, 1896, was canceled. Whatever right the plaintiff had to renewal premiums necessarily depended upon the provisions of the contract of 1896, and that contract expressly covered the obligation of the defendant to pay renewal premiums on all policies that were outstanding at the date of the abrogation of the contract, if not by mutual consent, and which were renewed by the defendant of $1 for each $1,000 of insurance covered by the policies. That provision would include the renewal premiums which had been covered by the 1893 contract for, as to the renewal of policies that had not been written up on September 30, 1896, the 1893 contract was canceled. Thus the plaintiff's only right to recover was under the provisions of the 1896 contract, and when the defendant assumed to abrogate that contract it gave plaintiff a cause of action for the breach if the abrogation was unauthorized. Such a cause of action for a breach of the contract must necessarily include all the damages that the plaintiff had sustained in consequence of such breach. The plaintiff commenced such an action on April 1, 1897. The complaint in that action set up both the contract of 1893 and the contract of 1896; alleged that by the contract of 1896 the plaintiff was entitled to 85 per cent. on all first year premiums; that as additional compensation the defendant agreed to pay to the plaintiff on the last day of each month a renewal commission at the rate of $1 for each $1,000 of insurance renewed during said month; that on March 26, 1897, the defendant wrongfully claimed to abrogate and terminate the said contract of October 1, 1896, to the damage of plaintiff in the sum of $200,000; and the plaintiff demanded judgment against the defendant for that sum. In this complaint was expressly alleged the obligation of the defendant to pay renewal commissions; that the defendant had abrogated that contract which included its obligation to pay renewal commissions; and for the abrogation of the contract the plaintiff demanded judgment. The defendant interposed

an answer denying that the plaintiff had faithfully performed the duties to be performed by him, and that thereupon the board and officers of the defendant declared the contract between the plaintiff and the defendant abrogated and terminated and directed the president to pay the sums due under the contract by its terms in full satisfaction of all claims under the said contract, and that such payments had been duly made. The issues raised by these pleadings came on for trial, and the plaintiff recovered a verdict for $10,000 which was duly paid.

I therefore think that the judgment in the first action was a bar to this action. I also think that the contract of 1893 was entirely abrogated; all liability of the defendant under the contract of 1893 for renewal premiums written up after September 30, 1898, ended; the only right the plaintiff had was to recover under the 1896 contract damages for the abrogation of that contract, which damages he has recovered; and that therefore the plaintiff has no cause of action.

The judgment and order appealed from must therefore be affirmed, with costs.

McLAUGHLIN and DOWLING, JJ., concur. HOTCHKISS, J., dissents.

LAUGHLIN, J. I am of opinion that this action was barred by the former judgment between the parties. It appears that on the 20th day of July, 1893, plaintiff was employed by the defendant as its general manager by a contract in writing; that he entered upon the employment pursuant thereto, and so continued until the 20th day of August, 1896; and that on said day the board of directors of the defendant passed a resolution abrogating and annulling the contract on the alleged ground of neglect of duty on the part of the plaintiff in remaining abroad, but expressly empowering its executive committee to consult with plaintiff with a view to negotiating a new contract. The plaintiff maintained that the defendant was not justified by the facts in thus refusing to be bound by the contract, and it insisted that it was. The plaintiff, however, did not stand upon his rights under that contract, but consented to negotiate a new contract to take its place. On the 1st day of October, 1896, the parties made a new contract in writing for the employment of plaintiff by defendant as its general manager, but limiting the period of employment to ten years, and containing different terms with respect to the amount of commissions and the time of payment of renewal commissions on new business, the amount of insurance to be written, and the manner of employing and paying agents. Under the first contract, plaintiff was to bear all the expenses, including commissions of subagents, of writing insurance, and was to receive for his compensation a commission of 60 per cent. of the first premiums on all policies issued by the defendant, and a further commission, designated "a renewal commission," equal to $1 for each $1,-000 of the total insurance written by the company in force on the 31st day of December each year. That contract also provided that it should continue in force during the "faithful performance" by plaintiff of the duties devolving on him thereunder, "unless sooner terminated by mu-

tual consent"; and it contained a provision with respect to the contin-
uance of commissions, in the event of the termination of the contract
otherwise than by mutual consent, as follows:

"Should this contract be terminated otherwise than by mutual consent,
then the renewal commissions aforesaid, on all the insurance established at
the date of said termination, shall be payable as aforesaid, to the said party
of the second part, or to his heirs, executors, administrators or assigns, dur-
ing the next ten years following said termination, at which time all his in-
terest therein shall cease."

It is not entirely clear what was meant by the word "terminated" as
thus used in the contract. It is argued by the learned counsel for the
respondent, with much force, and there has been no attempt in the re-
ply brief to answer it, that the parties had in mind a termination by
disability or death of the plaintiff, or the dissolution or insolvency of
the defendant; and that it was not intended to leave it optional with
the plaintiff to abandon the employment at will and hold the defend-
ant liable for commissions on renewal premiums, or optional with the
defendant to discharge plaintiff at will and without cause and limit its
liability to such renewal commissions, for ten years.

If, before making the second contract, the plaintiff had brought an
action to recover damages for the breach of the first contract, arising
from the defendant's act in attempting to annul it, I am of opinion
that he would have been obliged to recover all his damages in that ac-
tion, and that he could not split them up and recover separately for
the wrongful discharge, and from year to year thereafter bring sep-
arate actions for his so-called renewal commissions on the total amount
of insurance in force on the 31st day of December in each year for the
succeeding ten years. In negotiating the second contract, the parties
evidently agreed that the new provision should not apply to commis-
sions theretofore earned and unpaid, or afterwards to grow due to
plaintiff on account of policies theretofore written, and that he should
not be deprived of such commissions; and to cover this point it was
provided in the second contract, as follows:

"That all business done by the company, and all insurance written by it up
to and including September 30, 1896, shall be governed by and subject to the
terms of the said contract of July 20, 1893, and that all sums of money due
or to grow due to said Townsley under said contract of July 20, 1893, shall
be paid to him or his legal representatives in all respects as in said contract
provided, and that the said contract, except as to the business done thereun-
der as aforesaid, and except as to deferred first year premiums, and except
as to renewals written up to and including September 30, 1896, is wholly
canceled."

The plaintiff continued to discharge the duties of general manager
of the defendant, until the 26th day of March, 1897, when he was dis-
charged.

On the 22d day of the month following, he brought an action against
the defendant, alleging both contracts and the breach of the second
contract by a wrongful discharge, and claiming damages in the sum
of $200,000; and on the 9th day of June, 1903, he recovered a judg-
ment therein for $10,821, which has been paid. The defendant duly
pleaded and proved that judgment in bar of this action. It does not
clearly appear whether or not on the final trial of that action the plain-

tiff sought to recover damages for being deprived of the benefits of the contract with respect to the so-called renewal commissions on premiums paid on policies written under the first contract, as well as for having been deprived of the opportunity provided by the second contract for earning commissions on the first premiums and renewal premiums on new insurance, or whether the verdict embraced both; and counsel for the respective parties differ on this question. If these items of damage gave rise to two causes of action, the burden of showing that they were both litigated was on defendant (Rudd v. Cornell, 171 N. Y. 114, 63 N. E. 823; Griffen v. Keese, 187 N. Y. 454, 80 N. E. 367), and I think that it has not successfully borne it. I am of opinion, however, that plaintiff had but a single cause of action, and, if so, it is not material whether he recovered all his damages, for, since he might have litigated in that action his right to commissions on the renewal premiums on insurance written under the first contract, he could not split up his claim into two or more causes of action. Bendernagle v. Cocks, 19 Wend. 207, 32 Am. Dec. 448; Goldberg v. Eastern Brewing Co., 136 App. Div. 692, 121 N. Y. Supp. 465; Simon v. Bierbauer, 154 App. Div. 506, 139 N. Y. Supp. 327; Griffen v. Keese, supra; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Pakas v. Hollingshead, 184 N. Y. 211, 77 N. E. 40, 3 L. R. A. (N. S.) 1042, 112 Am. St. Rep. 601, 6 Ann. Cas. 60; Colburn v. Woodworth, 31 Barb. 381. It is quite plain, I think, that by the second contract the first contract was terminated by mutual consent. Certain of its provisions were retained and made a part of the second contract and incorporated therein by reference, evidently for convenience, instead of being set forth in full. Nevertheless, the new contract, even as to the provisions thus retained, became a substitute for the old. See Crimmins v. Carlyle Realty Co., 132 App. Div. 664, 117 N. Y. Supp. 434; Clark on Contracts (2d Ed.) p. 420; Bishop on Contracts, §§ 764, 768, 769.

The learned counsel for the plaintiff seeks to sustain this action on the theory, as I understand his argument, that it is based on the first contract with respect to commissions on renewal premiums for ten years after the termination of that contract, otherwise than by mutual consent; for, although the action was not brought until December 29, 1910, no commissions are claimed after the year 1906. By the express terms of the second contract, all provisions of the first contract, excepting in so far as they are incorporated therein, or retained by reference as aforesaid, are canceled. If the first contract was terminated by mutual consent, then it is clear from its provisions that all rights of the plaintiff, including the right to commissions, ceased and terminated, and, if any right in that regard has been preserved, it is by virtue of the new contract and as a condition of obtaining the mutual consent to cancel the first contract. The action could only be sustained under the first contract on the theory and ground that that contract had been terminated. Since, however, plaintiff refused to acquiesce in the action of the defendant in attempting to annul the first contract, it cannot be maintained that it was terminated by the resolution passed by the board of directors of the defendant, to which he did not accede, and

which resulted in the negotiation of the second contract. Assuming, without deciding, that either party could terminate the contract for cause, it has not been shown that sufficient cause existed to warrant the action taken by defendant; and I am of opinion that it was not intended that either party, without the consent of the other, could terminate it without cause. If therefore the first contract has been terminated, it must have been terminated by the new contract, and that would constitute a termination by mutual consent, which would not have entitled plaintiff to commissions under the first contract.

Moreover, the period for which the plaintiff claims the right to recover these commissions is substantially—there is an unexplained difference of a month—the period of ten years commencing with the date of the second contract, which indicates that his claim is that the first contract was terminated by the second, and that he is entitled to recover under the first. This also shows that he does not claim that his wrongful discharge under the second contract terminated the first, for if he did the period during which he would be entitled to commissions would commence at the time of such wrongful discharge. But he does not claim the right to recover on that theory; and, if he did, manifestly his cause of action would be predicated on the wrongful discharge under the second contract and would arise thereunder.

The judgment in the former action would not be a bar to an action for the recovery of money due to plaintiff under either contract at the time of the alleged breach; but the reason for that is that the right to recover such moneys would constitute a separate cause of action, which might have been joined in the same complaint, but could be presented separately. Perry v. Dickerson et al., 85 N. Y. 345, 39 Am. Rep. 663. An action for moneys due could be maintained consistently with the continuance in force of the contract, but an action for a wrongful discharge proceeds upon the ground of total repudiation by defendant of further liability on the contract arising in the future, and plaintiff's election thereon to regard the contract as terminated. Perry v. Dickerson et al., supra. It necessarily follows that plaintiff was obliged at his peril to recover in the former action all his damages resulting from a total repudiation of the second contract, which included the right, if any, to commissions under or pursuant to that contract, to be paid in the future. The fact that the principal part of the service in obtaining such renewal commissions had already been performed by plaintiff does not, I think, take the case without the rule, for it is evident that the amount of renewal premiums that would be paid in the future would depend largely on the ability and diligence of the manager in soliciting the continuance of the insurance. By the wrongful discharge, plaintiff was deprived of that opportunity, and the services to the extent they were rendered in that regard must have been performed by another or others. At the time of the former trial, the amount of plaintiff's damages through loss of such renewal commissions may have been somewhat speculative, but not as much so as his loss of renewal commissions on new insurance that he might have written. There would therefore have been no greater difficulty in proving the one than the other, and, if there were, his cause of

action was for being wrongfully deprived of the benefits of the second contract, which included these damages, and he might have waited, before bringing the action, until such time as he could prove and recover all his damages.

I vote for affirmance.

HOTCHKISS, J. (dissenting). The contracts of 1893 and 1896 were separate and distinct. When the latter was executed, all of the services incident to the earning of the renewal premiums on the business written prior to September 30, 1896, under the 1893 contract, had been performed by plaintiff. It only remained to ascertain the amount of insurance which should be in force at the end of the respective years during which his interests under that contract continued, and to compute the plaintiff's commission thereon. Neither a failure on plaintiff's part to perform his duty under the contract of 1896, nor his discharge for a breach of such duty, could affect his vested rights under the 1893 contract. Perry v. Dickerson, 85 N. Y. 345, 39 Am. Rep. 663; Milage v. Woodward, 186 N. Y. 252, 253, 254, 78 N. E. 873. It is true that, on the trial of the action for damages, plaintiff offered evidence of the amount of insurance he had procured during the years of the 1893 contract; but this was for the purpose of showing the amount of insurance he probably would have written under the 1896 contract if he had not been discharged, or, in other words, the value which he lost by such discharge.

Such evidence was not offered, nor was it competent under the pleadings, in support of any attempt on plaintiff's part to recover renewal commissions earned under the 1893 contract. There was no such issue in the case.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide event.